Marielle H. KRONBERG and Richard
E. Welsh, Plaintiffs,

v.

U.S. DEPARTMENT OF JUSTICE,
Defendant.

Civ. A. No. 92–2736 (GK).

United States District Court,
District of Columbia.

Feb. 13, 1995.

Marielle H. Kronberg & Richard E. Welsh, pro se.

Mark E. Nagle, U.S. Atty's. Office, Washington, DC, for defendant.

## MEMORANDUM—OPINION

KESSLER, District Judge.

### I. Introduction and Procedural History

Plaintiffs *pro se* Marielle Kronberg and Richard Welsh bring this action against Defendant Department of Justice ("DOJ") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiffs contend that the DOJ has been and is withholding certain records and information requested by Plaintiffs which are maintained by the DOJ's Criminal Division and the Executive Office of U.S. Attorneys. Specifically, Plaintiffs' requests seek records concerning grants of testimonial immunity to them pursuant to 18 U.S.C. § 6001 *et seq.* Each Plaintiff was under indictment in related state cases at the time his or her testimony was compelled. Each Plaintiff was compelled to provide immunized testimony before both a federal grand jury and a federal trial jury in Alexandria, Virginia; Mr. Welsh was also compelled to testify under immunity in a related federal trial in Boston, Massachusetts. Both Plaintiffs were subsequently convicted in state courts on charges allegedly related to the subject of their immunized testimony. According to the Complaint and other papers filed with this Court, Plaintiffs are in the process of challenging their state convictions under *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972)[1], and want to use the requested documents for that purpose.

Plaintiffs filed their Complaint on December 7, 1992, and Defendant answered on January 3; 1993. On January 25, 1993, the Court[2] granted Plaintiffs' Motion to Compel the Production of Records and the Preparation of A *Vaughn* Index[3] for Withheld Records. On March 10, 1993, Defendant submitted its purported *Vaughn* Index along with its Motion for Summary Judgment. On March 31, 1993, Plaintiffs responded to Defendant's Motion for Summary Judgment and filed their Motion to Compel Further Searches. These cross-motions have been ripe since May 10, 1993.

Since that date, Plaintiffs have submitted several additional filings to this Court, none of which have been responded to by Defendant. First, on February 3, 1994, Plaintiffs filed a copy of Plaintiff Welsh's Petition for a Writ of Habeas Corpus Ad Subjiciendum, filed on January 24, 1994 in the U.S. District Court for the Western District of Virginia. Plaintiffs submitted this brief in order to demonstrate the importance and "emergency nature" of their FOIA requests. More recently, on January 18, 1995, Plaintiffs filed with this Court two documents obtained by other FOIA requesters, in order to demonstrate that the information sought by Plaintiffs is available to Defendant, but Defendant has not conducted a reasonable search for the requested records in this case. Finally, on February 3, 1995, Plaintiffs filed a Motion for Leave to Take Discovery pursuant to Fed.R.Civ.P. 56(f), in order to obtain facts from Defendant to demonstrate that Defendant's searches were legally inadequate under FOIA.

The Court has considered the Motions, their Oppositions, the Replies, the file in this case—which is voluminous—in its entirety, and the applicable statutory and case law. For the reasons discussed below, the Court concludes that Defendant's Motion for Summary Judgment must be denied, and Plaintiff's Motion to Compel further searches must be granted.

---

1. In *Kastigar,* the Supreme Court held that in any subsequent criminal prosecution of a person who has been granted immunity to testify, the prosecution has the burden of proving affirmatively that evidence proposed to be used is derived from a legitimate source wholly independent of compelled testimony. 406 U.S. at 460–62, 92 S.Ct. at 1665–66.

2. This case was initially assigned to a different member of this bench, and was reassigned to this Court on July 1, 1994.

3. *See Vaughn v. Rosen,* 484 F.2d 820, 826–27 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

## II. Factual Summary[4]

### A. Ms. Kronberg's Requests

Plaintiff Marielle H. Kronberg, a resident of Loudoun County, Virginia, was indicted by a New York State grand jury on March 3, 1987.[5] On or about December 16, 1987, Ms. Kronberg was immunized and compelled to testify under 18 U.S.C. § 6001 *et seq.*[6] by Order of the U.S. Court for the Eastern District of Virginia, before a federal grand jury sitting in Alexandria, Virginia ("Alexandria grand jury"). Ms. Kronberg testified under that immunity grant on three days in 1987 and 1988 concerning matters substantially related to her New York State indictment. On or about December 1, 1988, Ms. Kronberg was immunized and compelled to testify at trial in *U.S.A. v. Lyndon LaRouche, et al.*, Criminal Action No. 88–243–A (E.D.Va.) ("Alexandria *LaRouche* trial"), again on subject matters related to her New York indictment. After she was convicted in August 1989 on one count in the New York charges (*People of New York v. Canning, et al.*, N.Y.Sup.Ct., N.Y.Co., Indictment No. 8654.87), Ms. Kronberg challenged her conviction pursuant to *Kastigar v. U.S.*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).[7]

### 1. The Criminal Division

On or about May 6, 1991, Ms. Kronberg made a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to the Department of Justice ("DOJ") Criminal Division. This request sought documents concerning "the issue of a testimonial immunity order being sought for [her], whether for a grand jury or trial," and any requests by the federal government to the State of New York to delay her state prosecution. She specifically included as part of the request, all correspondence between "Main Justice"— which she defined to include both the Criminal Division and the Office of Enforcement Operations within that Division—"and *other* Department of Justice offices, federal agencies, or state prosecutive jurisdictions concerning such a proposed immunity order, in which Main Justice solicited the other offices' opinion of the proposed immunity order and/or the other offices offered such opinions." Complaint, Exhibit 1 (emphasis in original).

After processing Ms. Kronberg's FOIA request, the Criminal Division located one responsive document in its files, which it dis-

---

4. Pursuant to Fed.R.Civ.P. 56(e), this Court will treat all facts not explicitly denied or disputed as conceded. *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also* Local Rule 108(h) ("In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."). All reasonable inferences are drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). The basic facts of this case are not in dispute.

5. These charges related to a multi-jurisdictional investigation of persons associated with the Lyndon Larouche political movement. Sixteen individuals, including Plaintiffs, and five companies were indicted on charges of credit card fraud and obstruction of justice related to an alleged loan fraud scheme. *See* Plaintiffs' Notice of Filing of a Copy of Plaintiff Welsh's Petition for a Writ of Habeas Corpus filed on January 24, 1994 in the U.S. District Court for the Western District of Virginia (filed with this Court February 3, 1994).

6. This statute provides:

Whenever a witness refuses, on the basis of his [sic] privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to ... a court or grand jury of the United States ... and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his [sic] privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

18 U.S.C. § 6002.

The statute further provides that: "[a] United States Attorney may, with the approval of the Attorney General, the Deputy Attorney General, or any designated Assistant Attorney General, request an order" under this section. 18 U.S.C. § 6003.

7. According to Plaintiffs' filing dated February 3, 1994, this appeal is still pending before the New York state trial court. *See* Plaintiffs' Notice of Filing, February 3, 1994, at page 4.

closed in part and withheld in part. On September 20, 1991, Ms. Kronberg appealed the Criminal Division's action of withholding certain information from her. Prior to deciding the appeal, the Division, by letter dated October 17, 1991, notified Ms. Kronberg that additional information might be obtained from the Executive Office of the United States Attorneys ("EOUSA"). On February 5, 1992, in response to Ms. Kronberg's appeal, the Division advised Ms. Kronberg that it would release additional information pertaining to her request.

### 2. The EOUSA

Ms. Kronberg directed a similar request, replacing "Main Justice" with "U.S. Attorney's Office" in the text. EOUSA received this request on May 15, 1991, and, after processing the request, ultimately released 71 pages of documents without redaction and withheld 28 pages in full pursuant to FOIA Exemptions 3 (in conjunction with Fed. R.Crim.P. 6(e)) and 5 and Privacy Exemption (j)(2). *See* Declaration of John Boseker. This search was primarily coordinated by Mr. John Boseker, Attorney–Advisor, EOUSA. *Id.* Mr. Boseker also directed Ms. Charlene A. Stawicki, Special Assistant United States Attorney, District of Massachusetts, to search 21 boxes of material in the U.S. Attorney's Office in Boston, but Ms. Stawicki located no documents responsive to Ms. Kronberg's request. *See* Declaration of Charlene A. Stawicki. In addition, Mr. Boseker directed Mr. Kent Robinson, an Assistant United States Attorney for the District of Oregon and formerly an Assistant United States Attorney for the Eastern District of Virginia, to conduct a search of records in his possession related to the LaRouche prosecutions, but Mr. Robinson advised that he had no records responsive to Ms. Kronberg's requests.

Finally, after another search in the Office of the U.S. Attorney for the Eastern District of Virginia, Mr. Boseker personally reviewed the contents of a file from that Office entitled *In re: People of the State of New York v.*

*Marielle Kronberg,* No. 900465, USAO No. 9001775. Mr. Boseker retrieved this file because certain of the previously-processed records responsive to Ms. Kronberg's request contained a number of grand jury documents and documents subject to sealing orders. Mr. Boseker submitted a description of the contents of this file, as well as the reasons for Defendant's withholding of a large part of it, in his Declaration submitted with Defendant's Motion for Summary Judgment.

### B. Mr. Welsh's Requests

Plaintiff Richard E. Welsh, a resident of Leesburg, Virginia, was indicted by a Commonwealth of Virginia grand jury on February 17, 1987. On or about July 22, 1987, Mr. Welsh was immunized and compelled to testify by Order of the U.S. District Court for the Eastern District of Virginia before a federal grand jury sitting in Alexandria, Virginia. Mr. Welsh testified under that immunity grant on seven days in 1987 and 1988 concerning matters related to his Commonwealth of Virginia indictment. On February 17, 1988, Mr. Welsh was immunized and compelled to testify at trial by Order of the U.S. District Court for the District of Massachusetts in *U.S.A. v. The LaRouche Campaign, et. al.,* Criminal No. 86–323–K ("Boston LaRouche trial"). Mr. Welsh testified under that immunity grant for eleven days; again, the subject matter of his testimony was related to his Virginia indictment. On or about November 29, 1988, Mr. Welsh was immunized and compelled to testify at trial in *U.S.A. v. Lyndon LaRouche, et. al., supra,* in Alexandria for three days. Again, the subject matter of his testimony was related to his Virginia indictment. After challenges to his indictment under *Kastigar, supra,* were denied, Mr. Welsh entered a guilty plea pursuant to an agreement with the prosecution in *Commonwealth of Virginia v. Welsh,* Roanoke County Circuit Court, Criminal Nos. CR8900623–626. Mr. Welsh was sentenced in August, 1990.[8]

---

8. According to Plaintiffs' filings, Mr. Welsh was sentenced to 75 days' incarceration on three concurrent one-year sentences (suspended after serving 75 days), followed by three years' probation, 250 hours of community service, and payment of the Commonwealth's costs of $1539.00; an additional seven-year sentence was suspended for a period of ten years. Plaintiffs' "Notice of Filing", February 3, 1994.

### 1. The Criminal Division

Plaintiff Welsh's FOIA requests sought essentially the same kind of information concerning his immunity orders as did Ms. Kronberg. Specifically, by letter dated May 14, 1991, Mr. Welsh wrote to the Office of Information and Privacy of the DOJ, requesting access to records "in the possession of the Department of Justice, particularly the Criminal Division and the Office of Enforcement Operations within the Criminal Division" for the time period October 6, 1986 to December 31, 1988, concerning the issue of a testimonial immunity order being sought for him, whether for a grand jury or a trial.

On June 10, 1992, the Criminal Division received Mr. Welsh's request. Following Mr. Welsh's submissions of a Criminal Division Systems of Records List and a Privacy Act Identification and Request Form, the Criminal Division located one document responsive to his request. The Division released a portion of that document and withheld a portion of it.

Mr. Welsh appealed the Criminal Division's action on September 20, 1991. Prior to a decision on the appeal, the Criminal Division notified Mr. Welsh that he might be able to locate some of the information he sought, if it existed, from the EOUSA. The Office of Information and Privacy upheld on appeal the previous action withholding certain information.

### 2. The EOUSA

Mr. Welsh submitted a similar request to the EOUSA. By letter dated December 30, 1992, EOUSA released in full the nine pages of documents responsive his request that it located.

### III. Defendant's Motion for Summary Judgment Must Be Denied

#### A. Standard of Review

Under Rule 56, Fed.R.Civ.P., summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2513.

The FOIA places the burden of justifying nondisclosure on the government. 5 U.S.C. §§ 552(a)(4)(B), (b). In order for summary judgment to be appropriate in favor of the government in a FOIA case, the government must prove "that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from [the FOIA's] inspection requirements." *National Cable Television Ass'n, Inc. v. Federal Communications Commission,* 479 F.2d 183, 186 (D.C.Cir.1973). In order to discharge its burden, the agency may provide a "relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Central, Inc. v. U.S. Dep't of Air Force,* 566 F.2d 242, 251 (D.C.Cir.1977).

The Courts may, and often do, grant summary judgment on the basis of government affidavits or declarations that explain how requested information falls within a claimed exemption, as long as the affidavits or declarations are sufficiently detailed, non-conclusory, and submitted in good faith, and as long as a plaintiff has no significant basis for questioning their reliability. *Goland v. CIA,* 607 F.2d 339, 352 (D.C.Cir.1978), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980); *see also Coastal States Gas Corp. v. Dept. of Energy,* 617 F.2d 854, 861 (D.C.Cir.1980); *Goland v. CIA,* 607 F.2d 339, 352–55 (D.C.Cir.1978); *Shurberg Broadcasting of Hartford, Inc. v. FCC,* 617 F.Supp. 825, 831 (D.D.C.1985).

In this case, as will be discussed below, Plaintiffs Kronberg and Welsh have supplied such significant bases for questioning the reliability and completeness of the govern-

ment's affidavits.[9] Further, and more significantly, Defendant has not demonstrated that it has discharged its burden under FOIA of demonstrating "that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from [the FOIA's] inspection requirements." *National Cable Television Ass'n, supra,* 479 F.2d at 186. For that reason, Defendant's Motion for Summary Judgment must be **denied,** and Plaintiff's Motion to Compel Further Searches must be **granted.**

### B. The FOIA Statute and Its Exemptions

"The central purpose of FOIA is to 'open[ ] up the workings of government to public scrutiny' through the disclosure of government records." *Stern v. FBI,* 737 F.2d 84, 88 (D.C.Cir.1984) (quoting *McGehee v. CIA,* 697 F.2d 1095, 1108 (D.C.Cir.1983)). In order to further the "citizens' right to be informed about 'what their government is up to' ", the FOIA mandates " 'full agency disclosure unless information is exempted under clearly delineated statutory language' ". *Department of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 773, 109 S.Ct. 1468, 1481, 103 L.Ed.2d 774 (1989) (quoting *Department of Air Force v. Rose,* 425 U.S. 352, 360–61, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976)). However, in recognition of the need to protect important governmental functions as well as the privacy of individuals, Congress exempted from disclosure nine categories of information. 5 U.S.C. § 552(b); *see Stern v. FBI,* 737 F.2d at 88.

In this case, the government invokes the protection of FOIA exemptions (b)(3), (5), (6), (7), and (7)(C) to justify their refusal to disclose certain information to Plaintiffs. Plaintiffs dispute the applicability of FOIA exemptions (b)(3) and (5)[10] and request that the Court compel the Defendant to conduct further searches for relevant documents.

Accordingly, the issues before the Court upon Defendant's Motion for Summary Judgment are whether the government properly invoked exemptions (b)(3) and (5) in withholding certain records from Plaintiffs, and whether the government is obligated under FOIA to conduct further searches. For the reasons stated below, the Court concludes that Defendant improperly invoked the FOIA exemptions in a number of instances, and, because the government has not shown that it has conducted a legally adequate search, it must be compelled to conduct further searches, as directed in the accompanying Order.

### C. Defendant Improperly Invoked Exemption (b)(3) In Certain Instances

■ Exemption (b)(3) of FOIA covers records which are "specifically exempted from disclosure by statute ... provided that such statute [requires withholding] in such a manner as to leave no discretion on the issue." 5 U.S.C. § 552(b)(3); *see also Senate of Puerto Rico v. United States Department of Justice,* 823 F.2d 574, 582 (D.C.Cir.1987). The Federal Rules of Criminal Procedure, in turn, prohibit disclosure of "matters occurring before [a] grand jury." Fed.R.Crim.P. 6(e)(2).

While acknowledging the existence of a "grand jury exception" to the general disclosure requirements of FOIA, the Court of Appeals for this Circuit has limited it to material which, if disclosed, would " 'tend to reveal some secret aspect of the grand jury's investigation[;]' such matter as 'the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of ju-

---

**9.** The Court is well aware that the Plaintiffs in this case are pro se litigants—although their filings do demonstrate extraordinary lucidity, logic and legal sophistication.

**10.** Plaintiffs do not contest the application of the Privacy Act exemption in this case. Plaintiffs' Opposition to Defendant's Motion for Summary Judgment, at p. 23 n. 17. Defendant "take[s] this to mean that they do not take issue with [D]efendant's reliance upon FOIA Exemptions 6 [providing protection for law enforcement infor-

mation the disclosure of which 'could reasonably be expected to constitute an unwarranted invasion of personal privacy'] and 7(c) [also providing protection for personal information in law enforcement records]". *See* Defendant's Opposition to Plaintiffs' Motion to Compel Further Searches at 7 n. 3. The Privacy Act, however, (as well as privacy-based exemptions) does not protect from disclosure records which are otherwise mandated for disclosure by the FOIA. 5 U.S.C. § 552a(b)(2).

rors, and the like.'" *Id.* (footnote omitted). In sum, in order to be exempted under (b)(3), the material must " 'elucidate the inner workings of the grand jury' ". *Id.* at 583 (quoting *Fund for Constitutional Government v. National Archives and Records Service,* 656 F.2d 856, 870 (D.C.Cir.1981)). If this were not the case, "[a]utomatically sealing all that a grand jury sees or hears would enable the government to shield any information from public view indefinitely by the simple expedient of presenting it to the grand jury." *Id.* at 582.

In this case, the EOUSA withheld in full the following documents pursuant to Exemption (b)(3): *Vaughn* numbers 4, 6, 19, 20, 21, 25, 33 and 36.[11] Defendant's *Vaughn* Submission, Boseker Declaration, ¶ 11. Except for document number 4, all of the documents withheld are motions by the Government to disclose grand jury material to prosecutors in other jurisdictions, and court orders issued pursuant to those motions. In a number of instances, Defendant justifies its non-disclosure on the ground that either motions or court orders were filed under seal.

The surface appeal of that argument is undermined by the fact that Defendant has already released, either to private counsel who were seeking to obtain documents for the purposes of Ms. Kronberg's *Kastigar* hearing, or to defense counsel as *Jencks*[12] material, several of the documents it seeks to withhold pursuant to this exemption.[13] Plaintiffs' Opposition to Defendant's Motion for Summary Judgment at 24–26, and exhibits referenced therein. The Court of Appeals for our Circuit has held that "the government cannot rely on an otherwise valid exemption claim to justify withholding information that has been 'officially acknowledged' or is in the 'public domain.'" *Davis v. U.S. Department of Justice,* 968 F.2d 1276, 1279 (D.C.Cir.1992) (quoting *Afshar v. Department of State,* 702 F.2d 1125, 1130–34 (D.C.Cir.1983) and *Fitzgibbon v. CIA,* 911 F.2d 755, 765–66 (D.C.Cir.1990)). Although,

in asserting a claim of prior disclosure, Plaintiffs bear the burden of production " 'pointing to specific information in the public domain that appears to duplicate that being withheld,'" *Davis, supra,* at 1279 (quoting *Afshar, supra,* at 1130), "[t]he ultimate burden of persuasion, to be sure, remains with the government". *Id.* In this case, Plaintiffs contend the following regarding specific categories of documents being withheld by Defendant:

- Withheld documents numbered 6, 9, 20 and 36, disclosed to counsel for Ms. Kronberg, should be released;

- If the U.S. Attorney in fact has the discretion to release the motions and orders he submitted under seal, the application of Exemption (b)(3) on the grounds that a sealing order is in effect should be deemed improper;

- Any of the Grand Jury information disclosed or otherwise made public (a) to the defense in the Alexandria *LaRouche* trial, (b) to counsel for Plaintiff Kronberg pursuant to her *Kastigar* hearing, (c) in the EOUSA's FOIA release, and (d) in the Criminal Division's FOIA release, which is *also* contained in any of the withheld documents, must be released under *Davis, supra, Afshar, supra,* and *Fitzgibbon, supra;* and

- Any non-exempt segregable material in the withheld documents must be released.

In its Opposition to Plaintiffs' Motion to Compel, Defendant does not dispute that these materials have been previously released. Rather, Defendant merely states— without citing any authority for this proposition—that disclosure of these previously-released materials would cause the FOIA exemptions to "swallow the rule." Defendant's Opposition to Plaintiffs' Motion to Compel Further Searches at 8. Given the controlling case law of this Circuit, Defendant's argument must be rejected.

---

**11.** Some additional documents that were withheld were merely duplicates of those discussed.

**12.** *See* 18 U.S.C. § 3500 (providing for the production of statements and reports of prosecution witnesses to the defendant in a criminal case).

**13.** As will be discussed below, the government does not deny this.

Furthermore, even if the material had not been previously disclosed, the government did not meet its burden of demonstrating that the records should be withheld because they would " 'elucidate the inner workings of the grand jury' ". *Senate of Puerto Rico, supra,* 823 F.2d at 583 (quoting *Fund for Constitutional Government, supra,* 656 F.2d at 870). On the contrary, Defendant, in many instances, merely states, but does not explain, how the information it withheld "would reveal *anything* concerning the inner workings of the grand jury." *Id.* (footnote omitted; emphasis added). Because Defendant has failed to adequately document and support its argument that the inner workings of the grand jury would be elucidated by disclosure of the documents in question, summary judgment in favor of Defendant is not warranted as a matter of law, and Plaintiffs are entitled to disclosure of the four categories of documents discussed above.[14]

### D. Defendant Improperly Invoked Exemption 5 To Withhold Certain Materials

■ FOIA's fifth exemption protects from disclosure "inter-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The Supreme Court and the Court of Appeals for this Circuit have construed this provision to "exempt those documents, and only those documents, normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149, 95 S.Ct. 1504, 1515–16, 44 L.Ed.2d 29 (1975); *see also FTC v. Grolier Inc.,* 462 U.S. 19, 26, 103 S.Ct. 2209, 2213–14, 76 L.Ed.2d 387 (1983); *Martin v. Office of Special Counsel,* 819 F.2d 1181, 1184 (D.C.Cir.1987). The language of the statute incorporates all civil discovery rules into FOIA exemption 5. *Martin, supra,* 819 F.2d at 1185; *Badhwar v. Department of the Air Force,* 829 F.2d 182, 184 (D.C.Cir.1987).

■ In this case, the EOUSA invoked FOIA exemption (b)(5) only to protect the attorney work product privilege. This privilege requires that the document sought to be withheld be both an "intra-agency or inter-agency memorandum[ ]" as well as also prepared in contemplation of litigation. *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 864 (D.C.Cir.1980).

Under this exemption, Defendant seeks to withhold two documents, both of which were located by the EOUSA. First, Defendant seeks to withhold a "1/3/90 internal memo (1 page) from DOJ paralegal to AUSAs of and concerning a review of specific and individually identifiable Grand Jury files ... conducted in connection with disclosure notices and specific target of Grand Jury investigation [sic]." Boseker Declaration, Attached to Defendant's Motion for Summary Judgment, *Vaughn* index document 4. Second, Defendant seeks to withhold a one-page photocopy of "legal research from a legal text entitled 'Criminal Procedure,' section dealing with 'witnesses from or for another State.' " Boseker Declaration, Attached to Defendant's Motion for Summary Judgment, *Vaughn* index document 5.

In analyzing the application of exemption (b)(5) to these records, the Court must keep in mind that the D.C. Circuit has concluded that "Congress intended to confine exemption (b)(5) 'as narrowly as [is] consistent with efficient government operation.' " *Senate of Puerto Rico v. United States Department of Justice,* 823 F.2d 574, 584 (D.C.Cir.1987) (quoting *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 868 (D.C.Cir. 1980)). Accordingly, " 'conclusory assertions of privilege will not suffice to carry' " the agency's burden "of 'establish[ing] its right to withhold evidence from the public.' " *Senate of Puerto Rico, supra,* 823 F.2d at 585 (quoting *Coastal States, supra,* at 861). Specifically, the application of the exemption must be rejected where "no factual support is provided for an essential element of the claimed privilege or shield." *Senate of Puerto Rico, supra,* at 585 (emphasis omitted).

Although document number 4—the paralegal memorandum—may indeed be covered

---

14. Even though there are not cross-motions for summary judgment pending, the FOIA establishes a presumption of disclosure, and the government has not satisfied its burden of nondisclosure. *See* text of Opinion, *infra.* Accordingly, Plaintiffs are entitled to these documents.

by the work product privilege, Defendant " 'has failed to supply [the Court] with even the minimal information necessary to make [such] a determination.' " *Id.* at 587 (quoting *Coastal States,* 617 F.2d at 861). For this exemption to apply, Defendant must explain with specificity why this information is confidential, and which litigation in particular it was prepared in anticipation of, so that it may be determined if any of the information contained within the record is properly segregable and disclosable. *Senate of Puerto Rico, supra,* 823 F.2d at 585–87. Defendant's explanation, which, just as in *Senate of Puerto Rico, supra,* includes merely the document's "issue date, its author and intended recipient, and the briefest of references to its subject matter"—is insufficient to justify application of the privilege. *Id.* at 585.

Even more noteworthy is Defendant's lack of justification for withholding document number 5 under exemption (b)(5). A photocopy of a page of a legal treatise can not possibly constitute an "intra-agency or inter-agency memorandum", since, by definition, it had to have been written by an individual outside the agency, that is, the treatise's author. Further, Defendant offers no explanation of how this legal treatise could have been written "in anticipation of litigation." Even if Defendant is in fact referring to comments written in the margins of this page, there is no reason why the document cannot be redacted and then released to Plaintiffs.

Accordingly, Defendant's invocation of exemption 5 with regard to documents number 4 and 5, absent further explanation, must be rejected.

### E. Defendant Conducted Unreasonable and Insufficient Searches

■ Plaintiffs attack the thoroughness of Defendant's search for responsive records. "It is elementary that an agency responding to a FOIA request must 'conduct[ ] a search reasonably calculated to uncover all relevant documents' ". *Truitt v. Department of State,* 897 F.2d 540, 542 (D.C.Cir.1990) (reversing the district court's grant of summary judgment in favor of the government on the grounds that the agency did not demonstrate that it made a sufficient search for the requested documents) (footnote citing, *inter alia, Weisberg v. U.S. Department of Justice,* 705 F.2d 1344, 1351 (D.C.Cir.1983), omitted). If the sufficiency of its search is challenged, the government must demonstrate " 'beyond material doubt' that the search was reasonable." *Truitt, supra,* 897 F.2d at 542 (citing, *inter alia, Weisberg, supra,* 705 F.2d at 1351). The standard of reasonableness is " 'dependent on the circumstances of the case.' " *Id.* (citing, *inter alia, Weisberg, supra* ). Summary judgment for the government is not proper, however, "if the record leaves substantial doubt as to the sufficiency of the search". *Id.* (citing, *inter alia, Perry v. Block,* 684 F.2d 121, 127 (D.C.Cir.1982)).

In this case, Defendant has not satisfied its burden of demonstrating "beyond material doubt" that the search was reasonable and adequate. Plaintiffs seek correspondence between the U.S. Attorneys' Offices, the Department of Justice, and state prosecutors' offices regarding the grants of immunity under which they were compelled to testify. The process of immunizing a witness is governed by statute,[15] regulation[16] and written Department of Justice policy,[17] all of which

15. *See* 18 U.S.C. 6003(b) ("A United States Attorney may, with the approval of the Attorney General, the Deputy Attorney General, or any designated Assistant Attorney General, request an order" under this section.)

16. *See* 28 CFR 0.175(a) (specifically authorizing the Assistant Attorney General in charge of the Criminal Division to exercise the authority vested in the Attorney General under 18 U.S.C. § 6003 concerning criminal matters or when the subject matter is not within other specific divisions' cognizance); 28 CFR 0.178(a) (limiting re-delegation of such authority to the Deputy Assistant Attorney General as "to be exercised solely during the absence of [the Assistant Attorney General] from the City of Washington").

17. *See* 28 CFR 0.22(b) (directing the EOUSA to publish and maintain the United States Attorney's Manual); *Department of Justice Manual* (1990–93 Supp.) (Attached as Exhibit A to Plaintiffs' Motion to Compel Further Searches) (hereinafter "DOJ Manual") §§ 9–23.100 and 9–23.110 (requiring that the request for immunity be placed in writing on DOJ Form OBD–111— even in exigent circumstances—after an oral request is made).

require written submissions to the Assistant Attorney General in the Criminal Division by the attorney requesting witness immunity. The Department of Justice Manual clearly requires that all requests for immunity for witnesses must be in writing on DOJ Form OBD–111 and must be approved by either the U.S. or Assistant U.S. Attorney. DOJ Manual §§ 9–23.100, 9–23.110 (Attached as Exhibit A to Plaintiff's Motion to Compel Further Searches). Form OBD–111 asks the requesting U.S. Attorney to provide highly specific information; much of this information constitutes the very information sought by Plaintiffs by means of their FOIA requests.[18] It is patently not credible that no such documentation exists.

Plaintiffs have provided evidence, in the form of testimony given by Assistant United States Attorneys Markham and Robinson at their separate state court *Kastigar* hearings, that these specific procedures both existed and were followed with regard to Plaintiffs' grants of immunity. *See* Exhibits D, E and F, Attached to Plaintiffs' Motion to Compel Further Testimony. Nonetheless, documents released to Plaintiffs reveal glaring absences: the document released to Ms. Kronberg appears to record the Criminal Division's receipt of the request for authorization of immunization for her grand jury testimony, and the forwarding of this request. *See* Exhibit G, Attached to Plaintiffs' Motion to Compel Further Searches. No documents were released, however, recording the *response* to this request. Similarly, the document released to Mr. Welsh appears to record Assistant Attorney General Weld's *response* to and *approval* of Assistant United States Attorney Mark Rasch's request for authorization to immunize Mr. Welsh's testimony before the United States District Court in Boston, Massachusetts. *See* Exhibit H, Attached to Plaintiffs' Motion to Compel Further Searches. Although supplying a record of the approval, Defendant failed to supply any record of the *request* for immuni-

zation itself. Further, Defendant provided no record whatsoever regarding Mr. Welsh's immunized testimony before either the grand jury or the trial court in Alexandria. In short, in some instances, the government provides documentation of a request for authorization, but no documentation of responses, and, in other instances, it supplies documentation of responses but no documentation of requests. In both situations, it fails to provide the actual records whose existence was documented. Obviously, much is missing.

■ Defendant does not deny that the detailed regulations described above exist and were in place at the times relevant to Plaintiffs' search requests. Defendant also does not deny that the procedures were followed and records were, at least to some extent, created. Rather, Defendant argues that because it has made a "good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested" (quoting *Oglesby v. Department of the Army*, 920 F.2d 57, 68 (D.C.Cir.1990)), its burden to conduct a search has been discharged, and it has satisfied the requirements of FOIA. However, in arguing that "Plaintiffs have failed to cast any serious doubt on the adequacy of Defendant's search," (Defendant's Opposition to Plaintiffs' Motion to Compel Further Searches at 7) Defendant disregards both the law and the facts. As to the former, it is the Defendant's burden to demonstrate " 'beyond material doubt' that the search was reasonable." *Truitt, supra,* 897 F.2d at 542 (citing, *inter alia, Weisberg, supra,* 705 F.2d at 1351). As to the latter, given the specific and demanding Justice Department Regulations and policy governing the immunization of witnesses, this "record leaves substantial doubt as to the sufficiency of the search" and the accuracy of the Defendant's representation that no records can be located documenting compliance with its own regulations

---

**18.** For example, this form requests the following information regarding the potentially immunized witness: whether the witness is being prosecuted in the instant case or matter, and if not indicted, why not; what federal or local charges against witnesses are pending; what federal and state offenses by the witness that his or her testimony could disclose; what opposition, if any, exists to granting immunity by state or local officials; and what would be the effect, if any, of granting immunity to the witness in any other federal district. *See* Blank OBD–111 Form, Attached as Exhibit C to Plaintiffs' Motion to Compel Further Searches.

and policies. *Id.* As the Court of Appeals concluded in *Truitt,* "summary judgment for the agency is not proper". *Id.*

Further, Plaintiffs *have* cast serious doubt on the adequacy of Defendants' search. On January 18, 1995, Plaintiffs filed with this Court two documents obtained by other FOIA requesters which demonstrate that Defendant possesses some files which, if searched, would be reasonably expected to contain relevant documents but have not been accounted for either to Plaintiffs or to this Court. In particular, Plaintiffs have submitted a Declaration by Assistant United States Attorney, Kent S. Robinson, who conducted the "Alexandria grand jury" and was lead prosecutor in the "Alexandria LaRouche trial." This Declaration, filed in *Mary Jane Freeman v. U.S. Department of Justice,* D.D.C. Civ. No. 90–2754 (SSH), describes the contents of several files of records relating to the U.S. Attorney's Office for the Eastern District of Virginia that Mr. Robinson maintains at his office in the District of Oregon. Plaintiffs contend—and the Court agrees—that the following files described and catalogued by Mr. Robinson in this Declaration appear to be likely to contain material responsive to Plaintiffs' requests to the EO-SUA:

2     Original and copies of letters from the Office of the Assistant Attorney General, authorizing the Eastern District of Virginia to seek immunity orders pursuant to 18 U.S.C. §§ 6002–6003.

4     Copies of applications submitted to the Department of Justice for authorization to apply for immunity compulsion orders.

5     Copies of immunity motions and orders.

29     Copies of materials relating to immunization of grand jury witnesses.

30     Copies of materials relating to immunization of grand jury witnesses.

107     Trial immunity orders and applications.

112     Richard Welch [sic] immunity motion and letter.

118     Form attachments to requests for immunity.

Significantly, Defendant has offered no response to Plaintiffs' filing of this Declaration, nor has it offered any explanation as to why these files were not initially searched for the purposes of the instant case. Based on the grave doubts Plaintiffs have cast on the extent of the government's search and the existence of files and locations which have not yet been searched, this Court cannot conclude that Defendant's searches were adequate or reasonable "beyond material doubt".

## IV. Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment shall be **denied,** and Plaintiffs' Motion to Compel Further Searches shall be **granted.**

An Order consistent with this OPINION follows.

### ORDER

The Court has before it Plaintiffs' Motion to Compel Further Searches (12–1) and Defendant's Opposition Thereto. The Court has considered the Motion; Defendant's Opposition; Plaintiffs' Reply; the relevant case law, and the file in this case in its entirety.

Given the specificity of the statutes, regulations and Department of Justice and United States Attorneys' manuals governing the authorization for immunization of witnesses, it is inconceivable that there is not a "paper trail" surrounding the authorization of immunization regarding Plaintiffs. Accordingly, and for the reasons stated in the accompanying MEMORANDUM–OPINION Denying Defendant's Motion for Summary Judgment, the Court has concluded that Defendant has not met its burden of demonstrating that it conducted a "search reasonably calculated to uncover all relevant documents". *Truitt v. Department of State,* 897 F.2d 540, 542 (D.C.Cir.1990) (numerous citations omitted). Accordingly, Plaintiffs' Motion must be **granted.**

WHEREFORE, it is this 10th day of February, 1995, hereby

ORDERED, that Plaintiffs' Motion is **granted;** and it is further

ORDERED, that Defendant Department of Justice's Criminal Division and Executive Office of United States Attorneys are to conduct further searches for responsive records, to have this search completed no later than *March 20, 1995;* and it is further

ORDERED, that the searches shall include:

● The following locations in the Department of Justice's Criminal Division, to locate records created or compiled pursuant to 18 U.S.C. § 6001 *et seq.* and 28 CFR 0.175, of which either Plaintiff in this case is a subject, and any other records related to the subject of Plaintiffs' requests:

● The Office of the Assistant Attorney General (Criminal Division),

● The Office of the Deputy Assistant Attorney General (Criminal Division),

● The Office of Enforcement Operations of the Criminal Division,

● The Witness Records Unit of the Criminal Division,

● The Offices of the United States Attorneys for (a) the District of Massachusetts—including the records maintained by District of Massachusetts AUSA Ralph Gants and former AUSA John Markham—and (b) the Eastern District of Virginia—including those maintained by Mr. Kent S. Robinson in the District of Oregon—to locate records created pursuant to 18 U.S.C. § 6001 *et. seq.* and 28 CFR 0.175, of which, respectively, Plaintiff Welsh is a subject (D.Mass.), and either Plaintiff is a subject (E.D.Va.), and any other records related thereto; and it is further

ORDERED, that to the extent responsive records may be located in a Federal Records Center or other archive storage, those locations should be included in the new searches.